JOSHUA MOORE, impleaded with Ira Y. Munn, Appellant, *v.* GEORGE VAIL, to use of A. Melick, Appellee; and SAME, Appellant, *v.* MOSES DODD, Appellee.

#### APPEAL FROM MORGAN.

If, at the time a conveyance is made, the premises conveyed are actually in the possession of a third party, claiming under a paramount title, it amounts to an eviction *eo instanti*.

Upon the common covenant that the vender, his heirs, &c. " will warrant and forever defend the title to said lots to " &c., there must not only be a want of title in the vender, but there must be an ouster under paramount title, before action will lie.

Such ouster may be established by showing that there was, at the time the covenant was made, a person in possession, holding under a paramount title. A party is not required to take actual possession of premises; but may even yield his possession, where another claims the premises under such a title, if presented and insisted upon.

A covenantee, if he relinquishes possession, must take the burthen of showing the necessity for doing so.

Where lands are unoccupied, as may be in this State, the legal title draws after it constructive possession, which will continue until actual eviction; and when possession is actually taken by one having paramount title, an action arises under the covenant, and the limitation commences to run from that time.

THE actions in this case are precisely similar in pleadings and proofs, both being in covenant on a deed, by which the parties covenanted, " that they, their heirs, executors and administrators will warrant and defend the title to the said premises (conveyed) to the vendee, his heirs and assigns forever, against the claim of all and any person or persons whatsoever."

The cases were submitted to WOODSON, Judge, of the Morgan Circuit Court, without the intervention of jury ; and a judgment was rendered against Moore for a breach of the covenant. The issue was found in favor of Munn, the other defendant, upon his plea of discharge in bankruptcy. Moore appealed, and insists that there was a legal eviction, as soon as the deed was made, by the actual possession and valid title of M. and F. Collins, and that he is now protected by the statute of limitations.

September 1, 1836, is the date of the deeds sued on.

The deeds were made by *Charles* Collins, Munn and Moore, to Vail and Dodd respectively.

At the time, *Charles* Collins, Munn and Moore had not, nor had either of them, any title whatever ; but M. and F. Collins then held the legal title, and were in the actual possession of the premises.

November 26, 1836, M. and F. Collins conveyed to *Charles* Collins, Griswold and Leslie, and delivered the possession to them, taking, simultaneously, a mortgage to secure the purchase money.

Shortly after, the possession was abandoned, and the premises lay vacant for a time.

Afterwards the mortgage was foreclosed ; and, under the foreclosure title, one Abrams took possession in 1848.

Vail and Dodd never had actual possession, and never sought to obtain it, by suit or otherwise.

May 3, 1855, these suits were brought in the court below, by Vail and Dodd, respectively, against Munn and Moore, Charles Collins being dead.

The *eviction*, insisted on by the plaintiff below, is the taking possession, with title, by Abrams, in 1848. But it is alleged, in the alternative, that the lots are not on Sec. 12, but on 13.

In this view, one Lynch was the true owner of the land, when, in 1835, certain judgments were obtained against him, and became liens on the land.

In January, 1836, the land was sold on execution, to satisfy these judgments.

In April, 1836, right of redemption not having expired, Lynch, remaining in possession, conveyed to Charles Collins.

June 4, 1836, Charles Collins conveyed an undivided third to Munn, and another third to Moore.

September 1, 1836, Charles Collins, Munn and Moore made the deeds now sued on.

Lynch continued in actual possession till the spring of 1837.

In 1838, a person was in possession, supposed to be as tenant to Charles Collins.

In 1839, the land, not having been redeemed from the execution sale, was conveyed, by the sheriff, to the purchaser.

In 1842, Mrs. Lynch, under the execution title, took possession, and this is the supposed eviction, on which the plaintiffs below proceed.

D. A. SMITH and A. LINCOLN, for Appellant.

M. McCONNEL, for Appellee.

CATON, J. With the view we take of the facts in this case, it is unnecessary to enter upon an examination of the questions which were argued, upon the supposition that the premises in question are situated on the east half of south-east quarter of Section 12; for, we find from the record that they were situated on the east half of the north-east quarter of Section 13. Taking the parol evidence as contained in the record, in connection with the recorded plat, and it is very uncertain on which quarter Collins' addition to the town of Naples was situated; although from this alone, considering the statements of Collins, made to Murry, I should think the preponderance would be that it was on Section 12. The plat of that addition does not determine on what tract of land the addition was laid out, nor did any witness ever see it laid out on the ground. Nor is it at all probable, to my mind, that it ever was actually surveyed on any tract of land adjoining Naples, according to the plat as recorded. It is altogether probable that it was merely platted on paper, and recorded without an actual survey; so that it might be as well supposed to be on one tract as on another. But Collins pointed to the east half of south-east of Sec. 12, as his addition to Naples. That might be conclusive against him, as to any person who purchased on the faith of that representation; but as to the plaintiff in this case, and all others who purchased lots in that addition, of Collins, Moore and Munn, he made a different representation, and that, too, in a much more solemn form. On the 4th of June, 1836, Collins sold and conveyed, by two separate deeds of warranty, of that date, to Moore and Munn each, "The following described real estate, situated in Morgan county, in the State of Illinois, and immediately adjoining the old town of Naples, and including Charles Collins' addition to said town, to-wit: one equal undivided one-third of eighty acres

I bought of P. Lynch, being the north-east quarter of Section thirteen, in township fifteen north, of range fourteen west." On the 18th of April previous, Lynch had conveyed this tract to Collins; and Lynch derived title from one Keyes, who was the patentee from the government. Those deeds from Collins, to Moore and Munn, are muniments of title under which the plaintiff received his conveyance. They affirm to all who purchase lots in Collins' addition under them, that the addition is situated on Section thirteen. They have as much right to insist that it is on Section thirteen, as Moore and Munn would have as against Collins, or as much as if their deed had contained the same statement that it was on this lot. We take it, then, as conclusively settled for the purposes of this action, that the premises in question were situated on the east half of the north-east quarter of Section thirteen, which Collins purchased of Patrick Lynch on the 4th of June, 1836. How, then, stand the other facts of the case? There is no dispute that Lynch derived a good title from Keyes. But at the time he sold to Collins, there were certain judgments against him, which were liens upon the land, and under which the premises were sold to one Bonesteel, who took a sheriff's deed in 1839, from whom, through a regular series of conveyances, the title was vested in Catherine Lynch; who, in 1842, took possession of the premises, which at that time were vacant. At what time the premises became vacant, does not appear; but the evidence does show that, at the time he sold to Collins, Lynch was in possession, and continued that possession till after the execution of this deed from Collins, Munn and Moore, to the plaintiff in this action, for the breach of the covenants of which this action is brought. The defence now insisted upon, is the statute of limitations. It is not denied that the title has failed, and that there has been, in contemplation of law, an eviction, so as to give the right of action on the covenants; but it is insisted that the title failed, and that a technical eviction accrued on the first day of September, 1836, the moment the deed was executed, which was more than sixteen years before this action was brought. We admit the principle of law as claimed, that if, at the time this conveyance was executed, the premises were actually in the possession of a third party claiming under a paramount title, that of itself amounted to an eviction, *eo instanti*. Rawle on Covenants of Title. From the facts already stated, does it appear that on the 1st of September, 1836, Lynch held possession of the premises under an adverse paramount title? The presumption is that he held, in subordination to the title which he had conveyed to Collins, and there can be no doubt that he might have been dispossessed, under the deed of conveyance on which this suit is brought, by an action of

ejectment. The continued possession of Lynch not being under paramount title, nor even adverse to the plaintiff's title, did not constitute an eviction so as to give the plaintiff a cause of action on his covenant of warranty. But it is insisted that there is a stipulation on file, which deprives the party of the right to insist upon the facts as they are shown by the proofs in the record. That stipulation is: "That said Collins, Moore and Munn had no good title to the land when they so sold and conveyed, and that their said title has failed, as charged in the declaration." The fair construction of this stipulation is perfectly consistent with the facts. The stipulation is, not that they had no title at all, but that they had no good title. This is literally true. They had a title, but it was not a good one, by reason of the incumbrance by which it was subsequently destroyed. It might have been rendered good, by a removal of that incumbrance before it ripened into a paramount title. But, admitting that the stipulation must be construed that they had no sort of a title at the time they sold, and that would not necessarily create a present liability, upon this common warranty in their deed. A mere want of title is no breach of this covenant. There must not only be a want of title, but there must be an ouster under a paramount title. Such ouster might be established by showing that there was, at the time the covenant was made, a person in possession holding under a paramount title; but the stipulation is silent on that subject, and the proof is positive that Lynch was not holding under any adverse title to that of the covenantors. There was, then, no breach of the covenant at the time it was made; consequently, as no cause of action then accrued, the statute of limitations did not commence running at that time; nor that there was a legal ouster, which could amount to a breach of the covenant.

Such eviction did occur, when Mrs. Lynch took possession of the premises in 1842. These are the facts, as before stated. At the time Patrick Lynch sold to Collins, certain judgments were existing against him, which were liens upon the premises, and under which they were sold to Bonesteel; who, after the redemption expired, took a sheriff's deed; and thus, for the first time, was created an absolute and paramount title to that which P. Lynch had conveyed to Collins. This title, by a regular series of conveyances, passed to Mrs. Lynch in 1842, who then, finding the premises vacant, took possession under her paramount title. How long P. Lynch continued the possession after he sold to Collins, does not appear; nor does it appear when the premises became vacant, or whether Collins or his grantees ever did take possession. Certain it is, however, that the premises were vacant when Mrs. Lynch took possession, under a paramount title, in

1842. There is no pretence of an actual physical eviction of the plaintiff. He must rely upon a constructive eviction, or eviction *in pais*. Few more interesting questions than this could be raised upon real covenants; but this subject has been so well examined upon authority, by Mr. Justice Koerner, in the case of *Beebe* v. *Swartwout*, 3 Gil. 162, that I shall forego my inclination to go over that ground again. The older authorities undoubtedly hold, that there could be no breach of a common warranty of title, or warranty for quiet enjoyment, until the covenantee had been actually evicted or turned out of the premises. The spirit of such a covenant, and the manifest justice of the matter, soon began to prevail over such an extremely literal interpretation of the intention of the parties. And it was held that, where, at the time of the execution of the covenantee, the premises were in the actual possession of another, who held them under a paramount or perfect title, then the covenant was broken as soon as it was made; for the party should not be put to the useless expense, delay and trouble to bring ejectment to get the possession, when it would certainly prove unavailing; nor should he be required to commit an actual trespass upon the real owner, in order to get possession, that he might himself be turned out of possession. But this is not the only case of constructive eviction which may now be considered as well settled by authority, and sustained by sound principles of morality and justice. If the covenantee be in the actual possession of the estate, he has the right to yield that possession to one who claims it under a paramount title, without resisting him by force or by litigation; and this is sustained by the same reasons of justice and good government which are applicable to the first exception. This, however, is not to be understood as holding that the mere existence of a paramount title constitutes a breach of the covenant, or that it will authorize the covenantee to refuse to take possession when it is quietly tendered to him, or when he can do so peaceably, and then claim that, by reason of such paramount title and his want of possession, the covenant is broken; nor will it justify him in abandoning the possession, without demand or claim by the one holding the real title. His possession, under the title acquired with the covenant, is not disturbed by the mere existence of that title; and he has no right to assume that it ever will be, until he actually feels its pressure upon him. He must act in good faith towards his covenantor, and make the most of whatever title he has acquired, until resistance to the paramount title ceases to be a duty to himself or his covenantor. While he is not bound to contest, where the contest would be hopeless, or resist, where resistance would be a wrong, yet always, where he yields without a contest or resistance, he must

take upon himself the burthen of showing that the title was paramount, and that he yielded the possession to the pressure of that title. Whenever he does yield quietly, he does so at his peril.

In this country, where so much of the land which is the subject of sale and transfer is actually wild and unoccupied, rules on the subject of eviction, as well as of possession, must be determined in reference to such a state of things. Although in this case, it does not appear that the covenantee was ever in the actual possession of the premises, yet he certainly once held the legal title; and, the lands being then actually vacant, such legal title drew after it the constructive possession; and this constructive possession continued until it was actually interfered with by the owner of the paramount title. Until that time, he might peaceably have entered upon and enjoyed the premises, without resistance or molestation, which was all his grantors covenanted he should do. They did not guarantee to him a perfect title, but the possession and enjoyment of the premises. There was no interference with this, till Mrs. Lynch entered and took possession of the property, in 1842. This entry being by paramount title, although peaceable and without opposition from the covenantee, was at least a constructive ouster and a breach of the covenant. Then, for the first time, an action accrued upon this covenant, and not till then did the statute of limitations begin to run. Since then, sufficient time has not elapsed to bar this action.

The judgment must be affirmed. *Judgment affirmed.*