LORENZO ALLIS, Administrator, *vs.* JOHN NININGER.

March 13, 1879.

**Covenant of Warranty—Breach.**—A covenant of warranty in a conveyance of real estate is not broken by the mere existence of a superior title in a third person, although the real estate is at the time vacant. But if, at the date of the covenant, there is a superior title outstanding in a third person, whenever that title is actually asserted against the covenantee, and the premises are claimed under it, and the covenantee is obliged to yield, and does yield, his claim to the superior title, the covenant is broken.

**Same—Eviction—Judgment in Ejectment, though Land is Unoccupied.**—So where, at the date of the covenant, the real estate is vacant, and continues vacant, and the owner of the true title brings against the covenantee actions in the form of ejectment to determine the title, the covenantee may waive the objection that, by reason of his not being in possession, that form of action will not lie, and may try the title in the actions thus brought, and, upon final judgment against him on the question of title, may abandon all further claim to the premises, and that will constitute a breach of the covenant.

**Same—Expenses of defending Title.**—The reasonable expenses of defending the title may be recovered by the covenantee in an action on the covenant.

Appeal by plaintiff from a judgment of the district court for Ramsey county, where the action was tried before *Brill*, J., a jury being waived.

*Allis & Allis*, for appellant.

*S. L. Pierce*, for respondent.

GILFILLAN, C. J.    Action on a covenant of warranty in a deed of real estate, executed by defendant and one Goldsmith to Coffin, whose administrator is the plaintiff.    The deed was executed in 1858.    At that time and ever since, the title to the lands was in one Greve, who, in 1869, brought two actions in ejectment for the lands against Coffin, in one of which final judgment was rendered in December of that year, in favor of Greve, for the recovery of the possession of a part of the real estate; and in 1876, final judgment was rendered in the other, in favor of Greve, for the possession of the remainder.    The lands were all the time vacant, neither Greve nor Coffin having ever been in possession.    Immediately after the determination of the first action, and after the commencement of the other, Coffin notified Greve that he made no further claim to the premises, and would not defend the second action. This action was commenced in proper time, if the breach happened at the time of this notice.    The court below decided that the right of action was barred by the statute of limitations.

On the facts two questions arise:    *First.* Was there, as is claimed by defendant, and seems to have been held by the court below, a breach of the covenant at the moment of the execution of the deed?    *Second.* Did a breach occur, as plaintiff claims, when Coffin, after final judgment against him in the first action, notified Greve that he made no further claim to the premises?

With the first question we have but little difficulty.    The covenant of warranty relates to the future, and not, as does the covenant of seizin or against encumbrances, to the present existing condition of things.    Its obligation is to defend the title granted, against any who shall lawfully claim the

premises in opposition to such title; and there can be no breach until a claim is so made, and a failure to defend against it. No case can be found which holds that the mere existence of a dormant paramount title in a third person, not asserted in any way against the covenantee's title, constitutes a breach. There must be an eviction, either an actual physical putting out, or, what is now regarded as equivalent to it, virtual exclusion, under the paramount title, of the covenantee from the peaceful enjoyment of his title. It was suggested, indeed, in *Grist* v. *Hodges*, 3 Dev. (Law,) 198, and *Duval* v. *Craig*, 2 Wheat. 45, that there is an instantaneous breach, where, at the date of the covenant, there is a superior title in a third person, and he is then in actual possession of the premises under it. But in such a case the superior title is not dormant; there is an actual and very effectual assertion of it, and exclusion of the covenantee by means of it. Here, there was at the date of the covenant a superior title outstanding, and that is all. The holder did not make any claim under it against the covenantee, in any way, till 1869. It is true, as claimed by defendant, that the law regards the true owner as constructively in possession of vacant lands. This imaginary or fictitious possession is assumed, however, only so far as may be necessary to enable the owner to assert and protect his rights. It does not, of itself, amount to an assertion of them. That, the owner must do for himself; the law will not do it for him.

Treating of the covenantee's right to yield possession without contest to the superior title, the court, in *Moore* v. *Vail,* 17 Ill. 185, say, (p. 190,) "This, however, is not to be understood as holding that the mere existence of a paramount title constitutes a breach of the covenant, or that it will authorize the covenantee to refuse to take possession when it is quietly tendered to him, or when he can do so peaceably, and then claim that by reason of such paramount title, and his want of possession, the covenant is broken; nor will it justify him in abandoning that possession, without demand or claim by

the one holding the real title. His possession under the title·
acquired with the covenant is not disturbed by the mere exist‐
ence of that title; and he has no right to assume that it.
ever will be, until he actually feels its pressure upon him.
He must act in good faith towards his covenantor, and make
the most of whatever title he has acquired, until resistance to
the paramount title ceases to be a duty to himself or his
covenantor." We approve this reasoning. It tends to enforce
good faith and fair dealing between covenantor and cove‐
nantee. As there was no claim made under Greve's title, prior·
to 1869, there was no eviction or anything equivalent to it;.
no breach prior to that time.

The second question is, in view of the authorities, more‐
difficult. There was no actual eviction in 1869. There·
could not be, for there was no actual possession from which
the covenantee could be actually evicted. It seems to have·
been held at one time, that to constitute a breach of the cov‐
enant of warranty, an actual putting out of possession was.
necessary, some cases going so far as to hold that it must be·
under a judgment. *Hamilton* v. *Cutts,* 4 Mass. 349; *Webb* v.
*Alexander,* 7 Wend. 281; *Kerr* v. *Shaw,* 13 John. 236. But
there were so very many cases in which. a covenantee's right
would be as effectually determined, and his enjoyment of the‐
estate granted as effectually prevented, by other means, as.
through a judgment actually enforced, or an actual putting
out of possession, that the doctrine of constructive eviction
grew up. Although the name eviction is still used to char‐
acterize the fact or facts which are allowed to constitute
a breach of the covenant, an eviction in fact is no longer nec‐
essary. The ingenuity with which courts have sometimes.
reasoned to connect the idea of eviction with facts constitut‐
ing a failure of the covenantor to keep the title and the rights.
belonging to it in the covenantee, is suggestive of the con‐
servatism with which the judicial mind clings to established
rules. For instance, in *Grist* v. *Hodges,* 3 Dev. (Law,) 198,
where the land was in actual possession under the adverse·

superior title, the court, having in mind that there must be an eviction of some kind, and that there could not well be any until the covenantee was in, argues that, under the statute of uses, the covenantee, as between him and the covenantor, was in possession, and that the latter could not, to defeat his covenant, say that such possession was not actual; and being thus in, the actual adverse possession put him out *eo instanti*, and so constituted an eviction. And in *St. John* v. *Palmer*, 5 Hill, 599, where the land was vacant and the covenantee did not take possession in fact, the court held that the legal title having passed to the covenantee, the constructive possession vested in him, and argues that he was evicted when the legal title passed to a purchaser under a decree for the foreclosure and sale upon a prior mortgage, because the constructive possession passed with the title to the purchaser, although such purchaser never got the actual possession.

Now, without exercising our ingenuity to construe a man to be in possession when he is not so in fact, and construe him to be put out when in fact he is not and cannot be put out, we express the rule which we gather from the cases in this way. If, at the date of the covenant, there is a superior title in a third person, whenever that title is actually asserted against the covenantee, and the premises claimed under it, and the covenantee is obliged to yield and does yield his claim to such superior title, the covenant to warrant and defend is broken. To such circumstances, we may, for the sake of convenience, apply the term eviction.

How was it in this case? The true owner brought an action in ejectment against the covenantee, to test the title. This was an assertion of his title and claim made under it, against the title of the covenantee. As the lands were vacant and not in the actual possession of the covenantee, he might have prevented a trial of the title in that form of action. But we do not think that good faith towards the covenantor required him to avoid the issue upon the title thus presented. On the con-

v.25m—34

trary, fairness to the covenantor justified him, Greve's title being in good faith asserted, in waiving all technical objections to the maintenance of the action in that form, and in bringing the question of title to as speedy a determination as possible. He elected to do so, and upon a trial between the two claims to title was defeated, and a judgment, based upon the superior title of Greve, rendered against him for the possession. It was unnecessary for Greve to issue execution on this judgment. The judgment itself gave to Greve as complete enjoyment of her legal rights as the case required or admitted. Against this judgment Coffin could never again assert his title, and the covenantors had no right to require him to do anything further.

We think there was, in consequence of these judgments, a breach of the covenant. The expenses reasonably incurred and paid by the covenantee in defending the title are recoverable as part of the damages.

The judgment below is reversed, and judgment ordered for plaintiff as claimed in the complaint.