private wrong is a sufficient incentive to cause him to complain against the wrong done, although he subjects himself to a judgment for the costs on a failure of the prosecution; but men are not apt to involve themselves in litigation and incur liability for costs over the catching or killing of fish or game, the property of nobody.

Stringent laws have been passed and great expense incurred by the state for the protection of its fish and game; and it is with the view of procuring the strict enforcement of the law, that the legislature, as far as it could do so, removed all impediments to the prosecution of violators of the laws.

This is the evident intent of the section under consideration, although, as often occurs in the statutes, the language used, in its expression and arrangement, is not a model of excellence.

We hold, that the witnesses and jurors are entitled to a writ as prayed, and for the amount as shown by the justice's transcript; that the justice is entitled to what he claims less $3.20 which we find to be unauthorized and illegal.

Several other questions were raised and argued by counsel, but our conclusion already reached made it unnecessary to consider them.

Writ allowed as indicated; respondent to pay costs.

James R. Lytle, for Relators.

George W. Carpenter, for Respondent.

---

(Huron County, Common Pleas.)

## H. W. BARKER v. ALBERT S. BLANCH-ARD et al.

1. When a covenantee of seizin and quiet enjoyment is unable to obtain possession in consequence of an existing possession by a person claiming and holding under an elder title, that is equivalent to an eviction. But the adverse possessor must hold under a paramount title. To claim under it is not enough. It must be in fact such a paramount title, not merely a claimed or alleged one.

2. The covenantor is not liable for any adverse occupancy before the making of his covenant, or for damages caused by any subsequent trespass.

3. It is lawful for one having a perfect title, to convey it to another, whether or not he is in actual possession of the property. Having such title he may covenant with his grantee that he is well seized of the premises as a good and indefeasible estate in fee simple, and a tortious adverse possession will not constitute a breach of his covenant.

4. The covenant of seizin and that for quiet enjoyment are substantially analogous. If there is a distinction, the one, for quiet enjoyment would seem more applicable than the other to the protection of the grantee or lessee, against a tortious possession.

5. In case of doubt as to the validity of an adverse claim, our statute, sec. 5780, R. S., has provided a safeguard to a vendee sued for the purchase money of the land, which he has bought.

---

WILDMAN, J.

This is an action to foreclose a mortgage given by the defendants, Albert S. Blanchard and Julia A. Blanchard, to the plaintiff, to secure the purchase price of about forty-three acres of land. The defense is an alleged breach of warranty in the deed, the defendants asserting a right to rescind the transaction and, upon reconveyance of the property, have a cancellation of the mortgage.

The facts, as claimed by the defendants Blanchard, are that at the date of the deed the grantor was not in actual possession of a strip of the land conveyed —about four acres,—and that the strip was adversely held, under a claim of right, by Elizabeth Artman and Michael Artman, her husband. It is not alleged that this claim was well founded, and the evidence in the case indicates that it was not.

As one of the proceedings in the action, the Artmans were made parties defendant on the application of the original defendants Blanchard, but were subsequently dismissed from the case at the request of the same original defendants.

The case has been heard on the controversy between the plaintiff, mortgagee, and the defendants Blanchard, the mortgagors. The contention of these defendants is that the covenant of seizin expressed in the deed to them was broken at its date by the adverse possession, whether tortious or otherwise, said to have been then held by the Artmans. On the other hand it is urged by the plaintiff: (1), that at the date of the deed the Artmans were not in fact in possession of the four acres; (2), that a warranty of seizin is not broken by any adverse possession unless the same is based upon a valid title paramount to that of the warrantor; and (3), that in no event are the defendants entitled to the relief asked by them, the rescision of their contract and cancellation of their mortgage.

Considering first the last of these three propositions, it is clearly sustained by principle and authority. The theory of the defendants is that the covenant of warranty was broken as soon as made, and that the adverse possession constituted an eviction from the four acres. It is not suggested that there was any eviction from the residue of the land. In harmony with the general rule of damages for breach of warranty, the measure is only the actual loss sustained by the purchaser. If, by a purchase of the adverse claim or other extinguishment,

of it, Mrs. Blanchard can become possessor of all the land attempted to be conveyed, her loss would seem to be no more than the expenditure necessary to attain that end. And her just claim against her warrantor may be even less than that. In case of eviction from all the land conveyed, a covenantee is entitled to reimbursement for the sum expended in procuring the outstanding title or in removing an outstanding encumbrance, if such sum exceeds the purchase price of the land in the sale by the covenantor. A like rule must be applied to an eviction from a part only of the land, and the measure of damages in such case must not exceed the proportion which the purchase price of the part bears to the purchase price of the whole, with such interest as under the circumstances of the case may be just.

The rule seems to be settled by the adjudications in our supreme court. Without reviewing them they may be cited as follows: Backus v. McCoy, 3 Ohio, 211, 221; King v. Kerr's Admr., 5 Ohio, 154, 160; Foote v. Burnet, 10 Ohio, 317, 330; Clark v. Parr, 14 Ohio, 118, and Wetzell v. Richcreek, 53 Ohio St., 62, 74.

By a fair construction of the defendants' cross-petition however, while a rescission of the contract and cancellation of the mortgage are plainly sought, the prayer is broad enough to entitle the defendants to recoupment for any damages which they have sustained as properly measured, if there has been a breach of the plaintiff's warranty of seizin.

As to the facts in evidence, it is beyond dispute that at the date of the deed and for some time before and after, Michael Artman was asserting a title to the four acre strip in himself or his wife, and was strenuously endeavoring to maintain a possession of it. The evidence is not so clear that he was in actual possession, either for himself or as agent for his wife, at the date of the deed. There was no house on the strip, and Albert Blanchard himself testifies that on the 24th day of August, 1894, the date of the conveyance, there was neither any crop on the strip nor any continuous fence separating it from the rest of the land described in plaintiff's deed.

A part of the strip was prepared for and sown to wheat the same fall, and Artman subsequently harvested the crop; but there is some confusion in the evidence as to what, if any, part of the plowing to fit the ground had been done prior to August 24th. Nor is it clear that if any of the ground had thus been plowed, it had been done by Artman or any one claiming adversely to the plaintiff. On a part of the strip was an apple orchard, from which, in October of the same year, Artman attempted to gather the fruit. The attempt was successfully resisted by the plaintiff, and a son of the defendants, Blanchards and Artman, with his ladders and his empty baskets, was driven off the premises. or, deeming discretion the better part of valor, voluntarily and in good order, retired.

True it is that at some time prior to the date of the deed, and probably as late as the month immediately preceding, Artman was in the exclusive possession of the four acres. It is equally true that we find him again in like possession at a later date, sturdily, and literally *vi et armis*, maintaining his claimed rights.

But the important query, so far as the facts of the case are concerned, is not what had been the condition of affairs or what was it to be, as regards the occupancy of this disputed territory, but what was the condition, at the very date of the deed? Were the Artmans, husband and wife, or was either of them, in its actual possession on the 24th day of August, so as to exclude the Blanchards therefrom. If not, and there was nothing to prevent the occupancy of the land by Mrs. Blanchard, there was clearly no breach of the warranty of seizin. The covenantor is not liable for any adverse occupancy before the making of his covenant, or for damages caused by any subsequent trespass.

I am disposed, however, to look further into the case, in view of the interesting legal question presented, which seems never to have been directly answered by an Ohio court in any reported case.

The defendants' cross-petition complains of no breach of any covenant, save that of seizin, and recites no other, as written in plaintiff's deed. The reliance upon the theory of the defendants' counsel is correctly placed on that covenant. If an adverse possession is not a breach of the covenant of seizin, there is no breach of any warranty in the conveyance. Unlike the usual form of a lease, a warranty deed does not ordinarily contain an express warranty of quiet enjoyment. Even if it did, it by no means follows that under the judicial definitions of the two phrases, anything would be added.

Counsel for the defendants, with much force, urge the recognized double meaning of the term "seizin": There is seizin in fact or deed, defined as actual possession, and there is seizin in law, or a legal right to possession.

The determination of the legal issue submitted hangs upon the answer to the question as to which of the two definitions of seizin is understood in the ordinary covenant of warranty.

While, as I believe, we have in Ohio no reported case, directly deciding the question as here presented, there are numerous dicta closely touching it.

The case of the Adm'rs of Backus v. McCoy, 3 Ohio, 211, is an important and leading case, which has been reported

and annotated in 17 Amer. Decisions, 585, and followed to some extent, though in the face of some other decisions, outside of Ohio. The case holds, in favor of the grantor, that seizin in fact, without legal title, is sufficient to sustain the grantor's covenant, and that until eviction by the holder of the paramount title, the grantee has no cause of action. This conclusion might well have been reached upon another premise, viz: that, even if the covenant was one of legal title rather than of actual possession merely, under which construction a lack of title would be an immediate breach of the covenant, still there would be no damage until eviction.

It is not to be denied, however, that the opinion goes farther and takes ground that there was not only no damage, but no breach until eviction, the covenant being treated as one of seizin in fact.

But there is language in the opinion which, by implication, tends to support the view that a covenant of seizin is sustained by either seizin in fact or seizin in law in the covenantor. "When the grantor is not seized, either in deed or in law, at the time of conveying, the covenant of seizin must be broken, at the moment of executing the deed containing it", are words found on page 221; and again, on the same page: "This is the case when the grounds are vacant, and the grantee [a probable misprint for grantor] has no title".

While it is not always safe to go very far in the way of implications from judicial opinions, beyond the points necessarily decided, the inference here is strong that in the opinion of the judge who announced the opinion, while actual possession would sustain the covenant, a lack of actual possession would not be a breach of it; that to constitute a breach there must be no possession, either in law or in fact.

A phrase usually found in these covenants is ignored in this decision of our supreme court, and perhaps the particular deed under consideration did not contain it. The words commonly employed (and they are used in the deed in evidence before me and recited in the cross-petition), are: "We are well seized of the above described premises as a good and indefeasible estate in fee simple." There would seem little significance in the use of this time-honored phrase, if it has no reference to title. So viewing it, the supreme court of Connecticut, in the case of Gilbert v. Bulkley, 3rd Am. Dec., 57, placing special emphasis on the words, "well seized", say, this "covenant was untrue and broken instantaneously so soon as it was made" where the covenantors had not then the legal title to the land sold."

The inference which I have suggested as properly to be drawn from the language of the opinion in Backus v. McCoy, supra, viz: that either seizin in fact or

seizin in law will sustain the covenant, finds support also in the cases of Foote v. Burnet, 10 Ohio, 332, and Devore v. Sutherland, 17 Ohio, 52, especially on page 60 of the latter report where we read: "If the grantor is not in actual possession and has not title, the covenant of seizin is instantly broken," etc.

Judge Bradbury, by his dictum in Vandyke v. Rule, 49 Ohio St., 53, that a cause of action "founded on a covenant of warranty necessarily draws in question title to real estate", seems to assume the same construction. A like inference may be drawn from the first and second syllabi of the case of Wetzell v. Richcreek, 53 Ohio St., 62. The supreme court treat the covenant of quiet enjoyment implied or express in a lease or an asignment thereof as substantially analogous with a covenant of seizin in a deed, and so considering it, hold that, "such covenant is broken if the assignor have not the possession of the premises at the time of the assignment, and is unable to deliver the same to the assignee on account of a prior and paramount title and possession of another."

Some emphasis is placed by counsel for the defendants here on the language found on page 71 of this Wetzell v. Richcreek case, that, "When a covenantee is unable to obtain possession in consequence of an existing possession by a person claiming and holding under an elder title, that is equivalent to an eviction".

But the words hardly support the argument of counsel, that a mere possession under a *claim* of title is an eviction. "Claiming *and holding* under an elder title", is the language. The adverse possessor must hold under the paramount title. To claim under it is not enough. And it must be in fact such a paramount title, not a claimed or alleged one.

There are other holdings that the covenant of seizin and that for quiet enjoyment are substantially analogous. If there is a distinction, the one for quiet enjoyment would seem more applicable to the protection of the grantee or lessee, against a tortious possession than the other; but even this covenant has been held not to be so far-reaching.

Quoting from 2 Kerr on Real Property, sec. 1224: "A covenant for quiet enjoyment is an undertaking on the part of the grantor that so far as he is concerned, he will do no act to interrupt the free and peaceable enjoyment of the premises demised during the continuance of the term. By this covenant, when general in its terms, the lessor stipulates, at all events to indemnify the lessee against all acts committed by virtue of a paramount title, but does not warrant against the act of strangers. Neither does he agree to put the lessee into possession of the demised premises. Thus, where the tenant is kept out of possession by the holding over of a former tenant, there is no breach of the

lessor's covenant. All that is required is that the lessor shall have such a title at the time of the demise as shall enable him to make a good, unencumbered lease for the term. But the covenant in the lease is held to be broken if the lessee is prevented from entering by a person who had superior title at the date of the lease.''

In section 1225, the author adds: ''The words 'lease, grant, and demise', imply covenants of warranty and of quiet enjoyment. This implied covenant is not one for the protection of the lessee's possession against the acts of the whole world, but only extends to the acts of the landlord and to strangers asserting a paramount title.''

Numerous citations are made by Mr. Kerr, under these several propositions. So far as accessible I have examined them, but will not now stop to review them.

A more direct authority is found cited by Mr. Wilcox in his elaborate annotations of the Foote v. Burnet case, already cited (10 Ohio, 317) on page 331 of the report. It is that of 1 Aik., 150, which holds; ''Where at the date of a deed, a stranger is in adverse possession with the statute of limitations running in his favor, and the grantee by his own laches, suffers such adverse possession to ripen into a perfect title, he has no remedy on the covenant of warranty: Aliter, if the title by adverse possession was perfect at the date of the deed''.

The supreme court of the United States has also considered the question, in the case of Noonan v. Brailey, Admr. of Lee, 2 Black (67 U. S.) 499. The holding is as follows: ''Where there is adverse possession, by virtue of a paramount title, * * * such possession is regarded as eviction, and involves a breach of the covenant of warranty.

''Where the paramount title is in the warrantor, and the adverse possession tortious, it is no eviction, either actual or constructive, and no action will lie upon the covenant''.

In support of this holding the supreme court cited, Randolph v. Meeks, 1 Mart & Yerg., 58; Moore v. Vail, 17 Ill., 185; Rawle, Covenants of Title, 224.

A contrary doctrine would seem to be asserted in Lawson's Rights, Rem. & Practice, vol. 5, p. 3855, sec. 2296, as correctly quoted by counsel; but the only adjudication cited by Mr. Lawson to sustain his covenant of seizin, is the case of Sedgewick v. Hollenbeck, 7 Johns., 376. An examination of that case discloses the fact that it does not sustain Mr. Lawson's text.

In Ohio a conveyance of land by a grantor who has no title is under some circumstances made unlawful by statute. See R. S., 7079. But it is surely lawful for one having a perfect title, to convey it to another, whether or not he is in actual possession of the property. If, having such title, he covenant with his grantee that he is well seized of the premises as a good and indefeasible estate in fee simple, my conclusion is that he may do so, and that a tortious adverse possession will not constitute a breach of his covenant.

I am strengthened in this conviction by the fact that I find in no authority cited me or which I have examined, any suggested measure of damages for such an assumed breach of warranty, and it would be difficult to formulate a just one.

To permit the defendants to recoup against the price of the entire farm the proportionate value of the four acres claimed to be adversely held, and letting the defendants go acquit of the residue, would be manifestly inequitable; for peradventure within a week or a month they might peaceably or otherwise gain possession of the four acres with a result of having received compensation for something not irrecoverably lost.

In case of doubt as to the validity of an adverse claim, our statute has provided a safeguard to a vendee sued for the purchase money of the land which he has bought. Upon sec. 5780 of the Revised Statute, I think that the vendee must rely.

The decree will be for the plaintiff. No personal judgment is asked. The cross-petition will be dismissed, at the costs of the defendants, Blanchards.

S. M. Young, Wm. G. Burnett, F. D. Gunsaulus, McKnight & Thomas, for Defendants.

F. K. Strimple, G. Ray Craig, for Plaintiff.