## Nels Pierce et al. v. Edward Coryn, Administrator, et al.

### Gen. No. 4,496.

1. REFERENCE TO MASTER—*when proper to set aside.* Where by action of one of the parties to a cause in chancery all the facts are left confessed, it is proper for the court to set aside a reference to a master and a report returned by him.

2. FORECLOSURE—*what defenses owner of equity may interpose.* In a chancery proceeding the owner of the equity of redemption may interpose any defense against an innocent purchaser for value which he might have interposed against the original holder of the notes in question.

3. REAL PROPERTY—*what sale of interest in.* · A sale of standing timber and the right to enter and cut the same is the sale of an interest in real property.

4. ASSIGNMENT—*when warranty not implied from terms of.* An assignment in the words following does not warrant and a warranty is not implied: "do hereby sell, assign, transfer and set over unto said party of the second part all his right, title and interest in and to a certain contract."

5. COVENANT OF WARRANTY—*what not included in.* A warranty of title and of quiet possession and peaceable enjoyment is against one lawfully claiming or seizing the property, and not against one who unlawfully claims or seizes it.

Foreclosure proceeding. Appeal from the Circuit Court of Rock Island County; the Hon. EMERY C. GRAVES, Judge, presiding. Heard in this court at the October term, 1905. Reversed and remanded. Opinion filed December 2, 1905. Rehearing denied April 16, 1906.

J. B. OAKLEAF and J. T. KENWORTHY, for appellants.

WILLIAM R. MOORE, for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

This was a bill filed on December 11, 1895, by Nels Pierce and Gust S. Lundquist against Isedore Verhulst, to foreclose a mortgage upon real estate in Moline, given to secure two notes of $800 each, wherein Verhulst was the maker, and L. C. Lewis was payee, said notes having been sold and indorsed by Lewis to Pierce and Lundquist. Verhulst answered, setting up that said notes were given as part consideration for a contract between Lewis and

himself, and that he had been enjoined from retaining the fruits of said contract, and therefore the consideration had failed. The cause was referred to the master to take and report proofs and conclusions. The master heard proofs only as to the execution and assignment of the note and mortgage, and that Pierce and Lundquist purchased the notes before maturity, for value. On June 29, 1896, the master filed a report, recommending a decree for complainants. Nothing further was done in said cause for several years, the parties apparently awaiting the termination of the litigation wherein Verhulst had been enjoined. Verhulst died intestate, and his administrator and heirs at law were made defendants, and answered and filed an amended answer, after the termination of the litigation wherein Verhulst had been enjoined. Complainants filed exceptions to the amended answer, which were overruled, and complainants did not reply. The administrator and heirs of Verhulst filed a cross-bill against Pierce and Lundquist, to have the mortgage declared a cloud upon the title to said premises, and to have the notes surrendered. Pierce and Lundquist demurred to said cross-bill, their demurrer was overruled, and they elected to abide by the demurrer. The court set aside the reference to and report by the master, and the cause was heard upon the bill and various supplements and amendments thereto, the amended answer, thereby taken as true, and upon the cross-bill, taken as confessed; and a decree was rendered finding that the consideration of said notes and mortgage had wholly failed; dismissing the original bill for want of equity; setting aside the mortgage as a cloud upon the title of the premises therein described, and directing Pierce and Lundquist to deliver up said mortgage and notes, and release the mortgage.

The correctness of this decree depends upon the meaning and effect of the contract between Lewis and Verhulst, above referred to. On January 24, 1893, A. J. Blethen entered into a contract with A. R. Stoddard and L. C. Lewis. He therein represented himself to be the owner,

either in person or as stockholder, of about twelve hundred acres of land near Briar Bluff, in Henry County, known as the property of the Briar Bluff Mining and Stock Company, upon which there was a growth of timber covering about five hundred acres, and that he desired to have said timber cut and removed. By that contract he leased and sold and gave to Stoddard and Lewis the right to remove all the timber upon said real estate within five years after February 1, 1893. Certain lands and timber were exempted from the contract, the manner of doing the work was specified, and a sufficient consideration was recited. Lewis became possessed of the interest of Stoddard in said contract. On May 23, 1894, Lewis entered into the contract here in question with Verhulst. In the first part thereof, Lewis stated that in consideration of the covenants and agreements of Verhulst thereinafter set forth, he sold, assigned, transferred and set over unto Verhulst all his right, title and interest in and to said contract from Blethen to himself and Stoddard; following which words of sale and assignment was this language: "The right, privilege and interest assigned to said party of the second part, as received by the said Lewis and Stoddard from the said Alden J. Blethen and by the said Stoddard assigned to said Lewis, is as follows:" Then the entire contract between Blethen and Stoddard and Lewis was set out, together with certain modifications that had been made thereto. The contract between Lewis and Verhulst then recited that Lewis, in consideration of the covenants and agreements of Verhulst, had also bargained and sold, and by those presents did grant and convey to Verhulst all of the down timber and wood then cut and contained on said premises, and also the portable engine, large and small saw-tables and saws, belts, shafting, gearing, and all appliances and tools then owned by Lewis, and used by him and Stoddard in the wood business on said premises. Lewis also therein agreed to retire immediately from the wood business, and turn over all his wood business and good will then enjoyed by him to Verhulst, which retirement should continue for the period of

five years, or so long as Verhulst kept the covenants and agreements on his part therein specified. Verhulst therein agreed to pay Lewis $2,500 as follows: $900 cash in hand, the receipt of which was acknowledged, and $800 in one year and $800 in two years after date, according to the tenor of the two notes above referred to, with interest at seven per cent. per annum, and secured by mortgage upon said real estate in Moline. Verhulst entered and began removing timber under said contract.

In fact, when Blethen made his contract with Stoddard and Lewis, this real estate was the property of the Briar Bluff Mining and Stock Company, of which Blethen was a stockholder and officer, and said company had, prior thereto, executed a trust deed upon said real estate and other lands, securing an indebtedness of $100,000, which trust deed had been recorded. On January 29, 1895, a bill was filed in the Circuit Court of Henry County to foreclose said trust deed. On June 29, 1895, Verhulst was made a defendant to that bill, and was enjoined from entering on the premises, or taking or removing or converting to his own uses any of the wood then standing, or which had been cut from said premises, and from taking and removing the tools, machinery and appliances then on said premises. Verhulst defended that suit, and had a decree dismissing the bill as to him, which decree was reversed in this court on February 28, 1898, in Minneapolis Trust Company v. Verhulst, 74 Ill. App. 350, and the cause was remanded. Verhulst had died, and his administrator was substituted in his place after said cause was remanded to the Circuit Court of Henry County, and on April 17, 1901, a final decree was rendered in said cause, wherein it was determined that the steam engine and boiler and tools and appliances included in said injunction were the property of Verhulst, and as to said property the injunction was dissolved. It was ordered that one-half of $842 remaining in the hands of the receiver in that cause should be paid to Verhulst's administrator, and said administrator was given till the first day of the next term to file a suggestion of damages for the wrongful issuing of said injunction.

The amended answer by the administrator and heirs of Verhulst was filed in the case now before us after said final decree in the Henry Circuit Court. That answer, after setting up in detail that said two notes of $800 each were a part of the consideration given by Verhulst to Lewis for said contract of assignment and sale, further stated that in pursuance of said agreement Verhulst "proceeded to cut and remove some of the wood from said premises, and continued so to do until on or about the 29th day of June, A. D. 1895," when Verhulst was enjoined as aforesaid. As the contract was assigned to Verhulst on May 23, 1894, and this allegation shows that he proceeded to cut and remove the wood, and continued to do so until June 29, 1895, it thus appears that for over thirteen months Verhulst was in possession, cutting and removing wood from the premises. The amount and value of the wood so removed is not stated. In the case from Henry county, when before us, it appears that that record showed Verhulst had taken timber from the lands of the value of $5,024. That record is not evidence here, but that recital is sufficient to suggest that Verhulst may have cut and removed from these premises, during said thirteen months, a very considerable portion of that which the assignment purported to give him the right to cut and remove. In another paragraph, said amended answer averred that Verhulst, after said assignment to him, and until June 29, 1895, "expended large sums of money for the purchase of tools, machinery, and for labor in cutting a large quantity of wood on the premises," amounting to more than $3,000, in addition to $900 in cash paid to Lewis, "all of which was wholly lost to said Isedore Verhulst;" and that by reason of the issuing of said injunction on June 29, 1895, and its remaining in force until April 17, 1901, the steam engine and boiler and tools and appliances included in said injunction "are of no value, and are wholly lost and destroyed." The answer then averred that at the time of the making and delivery of said assignment, Lewis was not well seized of the wood described in said contract, nor had he then good right, full power and law-

ful authority to grant, bargain, sell and convey the same; but on the contrary, he did not then have, and has not since acquired, any right or title to said wood, or any part thereof; and so the consideration upon which said notes and mortgage were made has failed. The cross-bill contained substantially the same allegations.

It is argued the court erred in setting aside the reference to the master and his report. That proof was taken and that report was made when the suit in Henry county was pending and its result could not be known. Thereafter Verhulst died, new parties were brought in, the suit in Henry county went to a final decree, and the result thereof was set up in the amended answer and cross-bill as a complete defense to the suit. The complainants elected to abide by their exceptions to the amended answer and their demurrer to the cross-bill, and thus left all the facts confessed. Under such circumstances, it was proper for the court to set aside the reference to the master and his report, and decide the case upon these later pleadings.

Appellants insist that, as they are innocent purchasers of the notes, the defense of failure of consideration is not available against them. This position would be true in a suit at law upon the notes. But in this suit in equity for the foreclosure of the mortgage, the endorsees of the note are subject to all the equities which could be invoked against Lewis, if he had not transferred the notes, but had filed the bill to foreclose in his own name. Bouton v. Cameron, 205 Ill. 50. If he had filed this bill to foreclose, it would have been competent to show failure of consideration.

Appellants contend that Verhulst took this assignment at his own risk; that the doctrine of *caveat emptor* applies; and that all Lewis warranted to Verhulst was that the signatures were genuine. The contract between Blethen and Lewis and Stoddard was an attempted sale by Blethen of standing timber and of the right to enter and cut the same. If Blethen had a right to make the contract, this was a sale of an interest in real estate. McRae v. Stillwell, 55 I.,

R. A. 513, and note. In assigning this contract, Lewis used these words: "do hereby sell, assign, transfer and set over unto said party of the second part all his right, title and interest in and to a certain contract," etc. We do not find in these words any covenant of warranty. Lewis expressly limited what was thereby conveyed to "his right, title and interest" in the contract from Blethen to himself and Stoddard, except for a recital that Stoddard had assigned to him. Either the original contract was not present, or there was but one copy, or for some other reason he was unable or unwilling to deliver the manual possession thereof to Verhulst, and so he copied the original contract and its modifications in his assignment. This did not enlarge the rights of the assignee, Verhulst, except that there was no doubt an implied covenant that there was a genuine contract from Blethen of the tenor therein set out, and that Lewis had acquired Stoddard's interest, and had a right to assign the contract. It will be seen that that part of the contract between Lewis and Verhulst which followed the copy of the prior contract was a bill of sale of personal property then on the premises, consisting of down timber and cut wood which had been obtained from the standing timber, and also of an engine, machinery, saws and tools, which had not been acquired from Blethen, and which Lewis had an entire right to convey. The amended answer and cross-bill do not allege that the down timber and cut wood which was on the premises when Lewis assigned to Verhulst remained there when the injunction was issued against Verhulst, over thirteen months later. The averment is that Verhulst entered under said assignment and cut and removed timber during said thirteen months. It is a reasonable presumption, in the silence of the pleadings, that he removed that which had been cut before he first entered. If the wood referred to in the amended answer and cross-bill which had been cut on said premises, and which Verhulst was enjoined from removing, was that which Verhulst cut, then as to said cut wood the final decree in said suit in Henry county is silent; unless it was

intended to be paid for by the direction to pay Verhulst's administrator one-half of $842. If the $421 was not to compensate Verhulst's administrator for wood which Verhulst cut upon the premises before the injunction was sued out, and if Verhulst and his administrator lost that cut wood by reason of the injunction, still it was a part of that which was standing timber when Verhulst took the assignment. Yet as to it, he took no covenants of warranty of title, and his loss of that wood does not constitute any failure of the consideration for said two $800 notes. If there was an implied warranty of title of the engine, machinery, saws and tools which Lewis sold to Verhulst in the contract above recited, yet there was no breach of that warranty. A warranty of title and of quiet possession and peaceable enjoyment is against one lawfully claiming or seizing the property, and not against one who unlawfully claims or seizes it. Such is the rule as to real estate. Rawle on Covenants for Title (3rd Ed.) chap. 5, pp. 163 to 171; Beebe v. Swartwout, 3 Gilm. 162; Moore v. Vail, 17 Ill. 185; Claycomb v. Munger, 51 Ill. 373; Jones v. Warner, 81 Ill. 343; Scott v. Kirkendall, 88 Ill. 464. The reasoning by which this rule is supported is equally applicable to personal property. The final decree in Henry county dissolved said injunction as to the engine, tools and appliances, and found them to be the property of Verhulst. As to them, therefore, the injunction was wrongfully sued out. Lewis could not be held responsible for this wrongful suing out of that injunction under any implied covenants for title or peaceable possession and quiet enjoyment of said personal property. Lewis did have and did convey the title to that property, and Verhulst was not disturbed in its possession by anyone having a lawful right to do so. The administrator must look to the complainant in that suit in Henry county, and to the injunction bond, for relief against the injury inflicted by the injunction, so far as it related to said machinery, tools and appliances. The amended answer and the cross-bill alleged that a part of the tools and machinery which were upon the premises at the time the in-

junction was issued were bought and put upon the premises by Verhulst, after the conveyance by Lewis to him. The loss of such tools and machinery has no tendency to establish any failure of consideration for the notes here in question. It is true that the amended answer and cross-bill aver that the consideration of said notes has failed, but that is only as a deduction from the facts alleged. Those facts do not show a failure of consideration, except possibly to a very limited extent, for in the absence of fraud, which is not charged here, this defense is really based upon the existence and breach of covenants of title and peaceable possession and quiet enjoyment. 2 Jones on Mortgages, secs. 1501, 1503.

To recapitulate: The decree here interposed refers to the following different kinds of property: First, the timber standing when Lewis assigned the contract to Verhulst. As to that timber, the assignment was practically a quit-claim deed of an interest in real estate, and there was no warranty of title, and therefore there has been no failure of consideration of the notes, because of the failure of that title. Second, the timber that had been cut prior to the assignment, and which was then lying upon the premises. As to this cut timber, there was an implied warranty of title (2 Benjamin on Sales, secs. 931, 961; Linton v. Porter, 31 Ill. 107), but it is not clear from the averments of the amended answer and cross-bill that Verhulst or his administrator lost any of that cut wood, but the fair inference from the pleadings is that Verhulst had removed it from the premises before he was enjoined. Third, the wood cut by Verhulst after he took possession, and before he was enjoined. If it was not paid for by the $421 which the decree in Henry county directed should be paid to Verhulst's administrator, still it was standing timber when the assignment was made, and there were no covenants of warranty of its title. Fourth, the machinery, tools and appliances sold by Lewis to Verhulst. The implied warranty of title as to these was not violated by the injunction, which was unlawfully sued out as to that machinery, and the

remedy of Verhulst's administrator for the loss or decay of that machinery is on the injunction bond and against the complainant in the injunction suit.  Fifth, the machinery and tools bought by Verhulst after the assignment, and included in the injunction.  This property had no connection with the consideration for the notes.  It follows that there has been no failure of the consideration of these notes for which Lewis could be held responsible, if they were still in his hands, except the possible loss of wood which had been cut before the assignment to Verhulst, and which, at the time of that assignment, was still on the premises. There is no positive averment here that any such cut timber was covered by and lost under the injunction, and if it was so lost, it may have been paid for in the $421.  The Henry county decree does not show why said $421 was ordered paid to the administrator of Verhulst.

The decree of the court below is therefore reversed, and the cause remanded.

*Reversed and remanded.*